IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY J. PETERKIN, SR.,<br><br>               Petitioner,<br><br>     vs.<br><br>ELIZABETH O'MEARA, Superintendent,<br>Gouverneur Correctional Facility,[1]<br><br>               Respondent. | No. 9:16-cv-01105-JKS<br><br>MEMORANDUM DECISION |

Anthony J. Peterkin, Sr., a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Peterkin is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Gouverneur Correctional Facility. Respondent has answered the Petition, and Peterkin has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On February 21, 2013, Peterkin was charged with third-degree criminal sale of a controlled substance and third-degree criminal possession of a controlled substance after a confidential informant ("CI") made a controlled buy of cocaine on March 21, 2012. After arraignment, Peterkin requested self-representation, and the request was granted. Peterkin proceeded *pro se* with the assistance of standby counsel to a jury trial at which the CI, a forensic scientist, and five law enforcement officials testified against Peterkin. According to the

---

[1] Elizabeth O'Meara, Superintendent, Gouverneur Correctional Facility, is substituted for Michael Kirkpatrick, Superintendent, Clinton Correctional Facility. FED. R. CIV. P. 25(c).

prosecution witnesses, the police arranged for a controlled buy at a home that had been identified by the CI as a location where drugs were being sold. When she arrived at the home, the CI asked one of the owners "if there's anything going on," which she intended as a drug reference. The individual answered in the affirmative and pointed to Peterkin, whom the CI recognized from previous visits to the home during which the two had smoked crack together. The CI then handed Peterkin the buy money, and Peterkin took it to the upper level of the home. When he returned, Peterkin handed the CI a bag containing a white substance that later tested positive for cocaine.

Peterkin was the sole witness for the defense. He testified that he heard the CI "asking Ed for some stuff" as he arrived downstairs from an upper story of the home. Peterkin testified that he accepted the funds from the CI and returned upstairs where he gave the funds to a "guy," from whom he also received "the stuff." Peterkin delivered "the stuff" to the informant. According to Peterkin, he procured the crack cocaine as a favor to the CI and he neither controlled the drugs nor profitted from the transaction.

Upon Peterkin's request, the trial court charged the jury on the defense of agency and explained to the jurors that, as part of the People's case, the People were required to prove "that [Peterkin] was not the agent of the buyer." After receiving the charges and deliberating, the jury found Peterkin guilty as charged. The court subsequently sentenced Peterkin as a second felony offender to concurrent 10-year determinate terms of imprisonment for each of the charges.

Through counsel, Peterkins appealed his conviction, arguing that the evidence was legally insufficient to sustain his conviction and that the conviction was against the weight of the evidence. The Appellate Division of the New York Supreme Court unanimously affirmed the

judgment against Peterkins in a reasoned opinion issued on January 21, 2016. *People v. Peterkin*, 23 N.Y.S.3d 719, 722 (N.Y. App. Div. 2016). The record does not indicate that Peterkins sought leave to appeal the denial to the New York Court of Appeals.

Peterkin then filed a *pro se* motion to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on the ground that Peterkin had discovered new evidence that exonerated him. Peterkin attached an affidavit in support of his motion in which he alleged that he had many conversations with Ed Roach, the owner of the house where the drug transaction took place, while they were both incarcerated at the St. Lawrence County Correctional Facility. Peterkin averred that the statements of Ed Roach and his wife would establish the presence of another person who sold drugs in the home. Specifically, Peterkin alleged that Roach was willing to testify that he allowed an individual named Barns to sell drugs from an upstairs bedroom in his home and that it was Barns who was both in possession of the drugs and sold them to Peterkin during the controlled buy in question. Peterkin further averred that Roach's wife was willing to testify that she knew of and allowed Barns to possess and sell drugs in their home. Peterkin did not provide affidavits from either of the Roaches, and contended that he was not able to call either as witnesses at his trial because he was prevented from having contact with them as a result of an order of protection issued on August 16, 2013, directing him to stay away from and have no contact with Ed Roach. Peterkin claimed that his difficulty in contacting the Roaches was compounded by the county court's denial of his motion for an investigator to help him locate and contact favorable witnesses. The county court denied the motion to vacate without a hearing in a reasoned, unpublished opinion issued on June 20,

2016. Peterkin sought leave to appeal the denial to the Appellate Division, which was summarily denied on August 9, 2016.

Peterkin timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on September 9, 2016. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Peterkin argues that: 1) he was denied his constitutional right to investigator assistance at trial; 2) he was denied of his rights to call defense witnesses and to present a defense due to his inability to call the Roaches at trial; 3) he was denied his right to "compulsory process for obtaining witness in [his] favor;" and 4) the county court erred in denying his CPL § 440.10 motion even after the People failed to respond.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S.

Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference);

*Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.      *Denial of Investigator/Inability to Call Roaches as Witnesses* (Grounds 1-3)

Peterkin first raises three grounds for relief that appear to relate to the trial court's denial of his pre-trial motion for the appointment of an investigator. Specifically, Peterkin claims that: 1) "his constitutional right to expert assistance at trial" was denied; 2) he "was denied the right to call defense witnesses and to present a[n agency] defense; and 3) he "was denied his right to compulsory process" because he needed an investigator to locate witness addresses so he could issue subpoenas.

As an initial matter, Respondent correctly argues that Peterkin has failed to exhaust these claims. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See*

6

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal.  *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).  Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted."  *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 2001).

Here, Peterkin first asserted that he was denied his right to an investigator, to present a defense, and to compulsory process when he moved to set aside the verdict, claiming that the potential testimony of Ed Roach constituted newly-discovered evidence.  But Peterkin did not substantively exhaust the claims because he failed to raise them in constitutional terms. Moreover, he did not present them to the highest state court that could hear his claim.  Peterkin did not raise the claims in his subsequent direct appeal.  Because it appears that these unexhausted claims are based on the record, they could have been fully raised on direct appeal but were not; consequently, Peterkin cannot bring a motion to vacate as to such claims.  N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,][a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the

defendant's unjustifiable failure to take or perfect an appeal . . . ."). Accordingly, they may be deemed exhausted but procedurally defaulted. *Clark*, 510 F.3d at 390; *Grey*, 933 F.2d at 121.

Moreover, even if Peterkin had fully exhausted these claims, he would not be entitled to relief on them. The record indicates that Peterkin moved in a *pro se* pre-trial motion "pursuant to County Law Art. 18-B & 722-c and pursuant to Federal Law" for the appointment of an investigator "to locate favorable witnesses," whose names he knew but whose addresses were unknown:

> I need an investigator to locate favorable witnesses. As you know these charges stem from incidents which occurred more than a year ago. I know the names of the people who[] were at that location at that time but not their current addresses. Such investigative services can also help me gather measurement information related to the distance; the surveillance of the location. Such information is vital to the defense of this case.

The trial court denied the request "as speculative and not specific." When Peterkin orally moved to set aside his conviction at sentencing, the trial judge remarked, without dispute from Peterkin, that Peterkin had never asked the court to issue subpoenas for Ed Roach.

Under New York law, "[u]pon a finding . . . that investigative, expert or other services are necessary and that the defendant . . . is financially unable to obtain them, the court shall authorize counsel . . . to obtain the services on behalf of the defendant." N.Y. COUNTY LAW § 722-c. To the extent Peterkin argues here that the trial court violated § 722-c in denying his request, such claim does not provide a basis for federal habeas relief because it is based solely on an alleged error of state law. *See Estelle*, 502 U.S. at 67-68; 28 U.S.C. § 2254(a); *Ballew v. Walker*, No. 97-CV_0349, 2001 WL 118580, at *6-7 (W.D.N.Y. Feb. 9, 2001) (petitioner neither established nor presented any evidence that failure to provide public funds for an investigator resulted in deprivation of a federal right).

Nor can Peterkin establish that his federal rights were violated by the denial. Supreme Court precedents establish the principles that: 1) a criminal defendant has the right to present a defense; and 2) an indigent criminal defendant has the right to assistance necessary for the preparation of an adequate defense. *Ake v. Oklahoma*, 470 U.S. 68, 76. Although recognizing that "fundamental fairness entitles indigent defendants to 'an adequate opportunity to present their claims fairly within the adversary system,'" the Supreme Court has not required a State to "purchase for the indigent defendant all the assistance that this wealthier counterpart might buy." *Id.* at 77 (quoting *Ross v. Moffitt*, 417 U.S. 600, 612 (1974)). Rather, the Supreme Court "ha[s] focused on identifying the 'basic tools of an adequate defense or appeal,' . . . and . . . ha[s] required that such tools be provided to those defendants who cannot afford to pay for them." *Id.* (citing *Britt v. North Carolina*, 404 U.S. 226, 227 (1971)). Thus, the Supreme Court held in *Ake* that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will . . . assist in evaluation, preparation, and presentation of the defense." *Id.* at 83. Likewise, in *Britt*, the Court found that a transcript of a prior trial is essential to proper trial preparation. *Britt*, 404 U.S. at 227-28.

Notwithstanding the "broad language in *Ake* suggesting application to a variety of circumstances in which an indigent defendant requests expert assistance, its precise holding was limited to the facts at hand." *Weeks v. Angelone*, 176 F.3d 249, 264-66 (4th Cir. 1999). After *Ake*, the Supreme Court expressly declined in *Caldwell v. Mississippi* to address a challenge to a state court decision denying a request for appointment of a criminal investigator, fingerprint expert, and ballistics expert without a showing of their reasonableness, and refused to address

9

whether indigent defendants who represent themselves must be provided with investigative services. *Caldwell*, 472 U.S. 320, 323 n.1 (1985). Thus, it cannot be said that governing Supreme Court precedents establish that defendants who represent themselves are presumptively entitled to investigative services. *See, e.g.*, *Brown v. Bradt*, No. 11-CV-972, 2013 WL 1636070, at *(N.D.N.Y. Mar. 25, 2013); *McGee v. Knowles*, No. C 02-2661, 2005 WL2171834, at *9 (N.D. Cal. 2005). On the contrary, lower courts examining the Supreme Court law have held that there is no established constitutional right to the appointment of an investigator where the defendant offers "little more than undeveloped assertions that the requested assistance would be beneficial." *Riley v. Taylor*, 277 F.3d 261, 307 (3d Cir. 2001); *see also Williams v. Stewart*, 441 F.3d 1030, 1053-54 (9th Cir. 2006) (the defendant must demonstrate that services of the investigator are required); *Van Pelt v. Keane*, No. CV-90-2072, 1991 WL 81973, at *7 (E.D.N.Y. May 6, 1991) (right to a court-appointed and state-funded criminal investigator "does not accrue unless a defendant can demonstrate need").

Likewise, Peterkin cannot show that the denial of his request for an investigator violated his right to self-representation under *Faretta*. "*Faretta* says nothing about any specific legal aid that the State owes a *pro se* criminal defendant." *Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (per curiam). Thus it cannot be said that there is a clearly-established right under *Faretta*, nor under any Supreme Court authority since then, for a *pro se* criminal defendant to obtain a state-funded investigator. *See, e.g.*, *McDay v. Napoli*, No. 09-cv-0454, 2013 WL 6231151, at *15-16 (E.D.N.Y. Dec. 2, 2013). While a defendant who elects to avail himself of his *Faretta* right to self-representation necessarily foregoes some assistance in issuing subpoenas and the like, there is simply no clearly-established right for the self-representing defendant to automatically receive

from an investigator assistance that counsel may have been able to provide. As discussed above, the *pro se* defendant must provide a clear and cogent reason for his request.

In any event, the trial court's decision to deny funds for an investigator was not error under either state law or federal constitutional law. As discussed, Peterkin failed to articulate any cogent reason why an investigator would be necessary. Notably, Peterkin failed to obtain an affidavit from advisory counsel on what efforts, if any, were made to obtain the Roaches' testimony and whether a subpoena to them was considered or discussed. Given the terse explanation for his request, the state court was not unreasonable in requiring more specific evidence or corroboration to support Peterkin's claimed need for an investigation. Accordingly, the state court's decision denying Peterkin's request for an investigator was neither an abuse of discretion, nor contrary to nor an unreasonable application of clearly established Supreme Court precedent, and he is not entitled to relief on these grounds.

B.     *Denial of CPL § 440.10 Motion* (Ground 4)

Peterkin additionally contends that the trial court erred in denying his CPL § 440.10 motion even though the People did not respond. This claim, however, is not cognizable on federal habeas review. Neither the Constitution nor federal law requires that states provide post-conviction review. *See Lackawanna Cnty. Dist. Att'y v. Coss*, 532 U.S. 394, 402 (2001) (holding that the Constitution does not require states to provide post-conviction remedies). "As no constitutional provision requires a state to grant post-conviction review, most federal courts have rejected due process claims arising out of the conduct of state post-conviction proceedings, holding that such claims are not cognizable on habeas review." *Cruz v. Smith*, No 05 Civ. 10703, 2010 WL 582348, at *29 (S.D.N.Y. Feb. 17, 2010) (citing *Pennsylvania v. Finley*, 481

11

U.S. 551, 557 (1987), and collecting district court cases) (footnote omitted); *see also Word v. Lord*, 648 F.3d 129, 131-32 (2d Cir. 2011) (holding that errors in state post-conviction proceeding are not cognizable in a federal habeas petition).[2] Thus, even if the court erred in not granting Peterkin's post-conviction motion after an alleged non-opposition, such error would not be cognizable in this Court.

Moreover, the record indicates that the People filed a response to the § 440.10 motion on April 20, 2016. It appears that the trial court was mistaken when it indicated in the opinion denying relief that "[t]he People have not responded to the motion." Peterkin is thus not entitled to relief on this ground in any event.

C.   *Motion Requesting Summary Order Granting Habeas Petition* (Docket No. 36)

After briefing in this case was completed, Peterkin filed a motion requesting a summary grant of his Petition due to the delay in adjudicating it. Docket No. 36. Peterkin alleged that since more than a year had passed since March 2017, when briefing in this case was complete, and he had not yet received a decision from this Court, he was entitled to a summary grant of his Petition. Peterkin argues that, "due to more than a year[']s delay by the court in deciding his

---

[2]   Other circuit courts have come to the same conclusion. *See, e.g.*, *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) ("[B]ecause the constitutional error he raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim."); *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996) (per curiam) ("Unless state collateral review violates some independent constitutional right, such as the Equal Protection Clause, . . . errors in state collateral review cannot form the basis for federal habeas corpus relief."); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) ("[E]rrors in a state habeas proceeding cannot serve as a basis for setting aside a valid original conviction. An attack on a state habeas proceeding does not entitle the petitioner to [federal] habeas relief in respect to his conviction, as it 'is an attack on a proceeding collateral to the detention and not the detention itself.'" (citation omitted)).

federal habeas corpus petition, the petitioner's right to due process of law, equal protection of the law and cruel and unusual punishment have been violated."

In support of his motion, Peterkin cites *United States ex rel. Schuster v. Vincent*, 524 F.2d 153 (2d Cir. 1975). In that case, the Second Circuit ordered the petitioner's immediate and absolute discharge where he had been confined in a state hospital for the criminally insane for 31 years and had been in prison for a total of 44 years for a crime for which the average prison term was 15 years, and the State has ignored the mandate of the Second Circuit requiring that it give the petitioner a hearing. *Id.* at 158. The Second Circuit did not explicitly decide whether the State's treatment of Schuster violated the Eighth Amendment prohibition against cruel and unusual punishment, but noted that "the State's behavior clearly approaches that forbidden by the Eighth Amendment." *Id.* at 162. That case has subsequently been examined in determining whether a State's egregious actions have barred retrial following a grant of federal habeas relief. *See Morales v. Portuondo*, 165 F. Supp. 2d 601, 609-15 (S.D.N.Y. 2001) (granting unconditional discharge and precluding retrial after determining that no reasonable jury could convict the petitioners of murder and that the prosecutor's handling of the case was "troubling"). *Schuster* does not apply here, however, because, as discussed above, Peterkin has not established that his due process rights have been violated or that he is entitled to habeas relief.

Construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), Peterkin's motion may request that the Court be compelled to render a decision in his case. Title 28 U.S.C. § 1361, the Mandamus Act, provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." But because this Court has now

considered and rejected Peterkin's Petition on the merits, such request would be moot. In any event, no actionable delay occurred in this case. *See, e.g.*, *In re Young*, 466 F. App'x 94, 95-96 (3d Cir. 2012) (one-year delay without ruling on habeas petition after petitioner filed reply "is not insignificant and raises some concern" but does not warrant mandamus relief); *In re Cooper*, 458 F. App'x 269, 269 (4th Cir. 2011) ("To the extent Cooper alleges undue delay in ruling on his § 2254 petition, the . . . docket sheet reflects no such delay . . . ."); *In re Razzoli*, 161 F. App'x 203, 205 (3d Cir. 2006) (although habeas petition had been "ripe for review" for about nine and a half months, the panel denied mandamus, stating, "the district court here has not engaged in undue delay").

## V. CONCLUSION

Peterkin is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Motion for Summary Order Granting Habeas Petition at Docket No. 36 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: May 15, 2018.

                /s/ James K. Singleton, Jr.
               JAMES K. SINGLETON, JR.
             Senior United States District Judge